ANDREA MARTINEZ, Acting United States Attorney (#9313)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #62368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
CY H. CASTLE, Assistant United States Attorney (#4808)
DARRIN L. McCULLOUGH, Senior Policy Advisor, Money Laundering and Asset Recovery
    Section (GA #487011)
Attorneys for the United States of America
111 South Main Street, #1800 | Salt Lake City, Utah 84111
Telephone: (801) 524-5682
Email: richard.m.rolwing@usdoj.gov| john.e.sullivan@usdoj.gov| cy.castle@usdoj.gov|
    darrin.mccullough@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:21-CR-140-JNP |
| Plaintiff, | : | UNITED STATES' MOTION FOR INTERLOCUTORY SALE ORDER OF SEIZED PROPERTY AND MEMORANDUM IN SUPPORT |
| v. | : | |
| SEZGIN BARAN KORKMAZ, | : | |
| Defendant. | : | Judge Jill N. Parrish |
| | : | Magistrate Judge Dustin B. Pead |

The United States of America, by and through its undersigned counsel, hereby moves this Court pursuant to Fed. R. Crim. P. 32.2(b)(7) and 21 U.S.C. § 853(e), for an order authorizing the immediate interlocutory sale of the property described as the luxury yacht named the "Queen Anne," refitted by Pina Marin in 2018, Hull Number Renewal No. DLZ76014G717, International Maritime Organization No. 9704958, Maritime Mobile Service Identity No. 518100712, and call sign E5U3623, and all property contained thereon and therein (hereinafter the "Subject Property"), presently in the lawful possession, custody, and control of the United States. In support of its motion and memorandum, the United States submits the following:

1

**BACKGROUND**

On March 16, 2020, Defendant Levon Termendzyhan was convicted by a jury of all charges, including a conspiracy to commit mail fraud and international money laundering. The government subsequently moved to forfeit the Subject Property as connected to those crimes of conviction. In addition, on April 1, 2021, the grand jury returned an Indictment charging Sezgin Baran Korkmaz with fraud as well as an international money laundering conspiracy with convicted defendant Termendzhyan. The grand jury also issued a probable cause finding in that Indictment regarding forfeiture for, among other things, the Subject Property.

On April 6, 2021, the Honorable Dustin B. Pead, Magistrate Judge, issued a sealed warrant authorizing the seizure of the Subject Property. The warrant is based upon a finding by the Court of probable cause, supported by affidavit, that the Subject Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), and 18 U.S.C. § 982 (a)(1), as it constitutes property, real or personal, involved in a violation of 18 U.S.C. §1956, or as property traceable to such property.

The facts showing probable cause surrounding the acquisition, ownership, and basis for seizure and forfeiture of the Subject Property are set forth in the sealed Declaration in Support of Application for Post-Indictment Seizure Warrant Under 21 U.S.C. § 853(f), signed by the Court on April 6, 2021, a copy of which is attached as Exhibit A.

The warrant was subsequently delivered by a Mutual Legal Assistance Treaty request to the Central Authority of Lebanon, where the Subject Property was docked at the Port of Beirut.

On April 23, 2021, with consent of the Central Authority of Lebanon, the Court's seizure warrant was executed on the Subject Property in the Port of Beirut, and the Lebanese Internal

Security Force at the request of the United States Marshals Service assumed possession, custody, and control of the Subject Property.

On July 31, 2021, the Lebanese Internal Security Force released the Subject Property to the United States Marshals Service, and it was moved from the Port of Beirut to Limassol Marina, Cyprus, where it remains in the possession, custody, and control of the United States. It is the intent of the United States to either sell the Subject Property to the highest bidder in its as-is condition where it is currently docked in Cyprus, or if no sale can be made in Cyprus, to move the Subject Property as soon as possible to a port in the United States for disposition, likely in Jacksonville, Florida, by way of Genoa, Italy.

## ARGUMENT

### I. This Court Should Approve the Motion for Interlocutory Sale

Under 21 U.S.C. § 853(e),[1] "upon application of the United States, the court may . . . take any other action to preserve the availability of property" subject to forfeiture. *See United States v. Gianelli*, 594 F. Supp. 2d 148, 150 (D. Mass. 2009) (Section 853(e) authorizes the court to "take any . . . action to preserve the availability of property" subject to forfeiture; interlocutory sale necessary to preserve equity in property for forfeiture).

Additionally, Fed. R. Crim. P. 32.2(b)(7) provides that "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable."

Supplemental Rule G of the Federal Rules of Civil Procedure governs forfeiture actions in rem arising under federal law and authorizes a court to order the interlocutory sale of all or

---

[1] This statute, which sets procedures in criminal forfeiture proceedings involving drug crimes, applies to the criminal charges in this matter by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b).

3

part of the property subject to a pending asset forfeiture action if certain conditions are met. Specifically, Rule G(7) provides:

> (a) *Preserving and Preventing Criminal Use of Property.* When the government does not have actual possession of the defendant property the court, on motion or on its own, may enter any order necessary to preserve the property, to prevent its removal or encumbrance, or to prevent its use in a criminal offense.
> (b) *Interlocutory Sale or Delivery.*
>
> (i) Order to Sell. On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:
>
> (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
>
> (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;
>
> (C) the property is subject to a mortgage or to taxes on which the owner is in default; or
>
> (D) the court finds other good cause.

Fed. R. Civ. P. G(7).

The sale may be ordered if it necessary to preserve the property, prevent its encumbrance, risk of injury or "finds other good cause." Supplemental Rule G(7) gives a court broad discretion to order the interlocutory sale of property subject to forfeiture for "good cause." *See, e.g.*, *United States v. One Parcel of Real Property*, 128 F.3d 1386, 1389-90 (10th Cir. 1997) (noting that the district court ordered an interlocutory sale of real property based on the government's assertion that, absent "great expense," the property was subject to deterioration, decay, or injury during the pendency of the action); *United States v. Hailey*, No. 11-CR-0540-WDQ, 2011 WL 6202787, 1 (D. Md. Dec. 8, 2011) (explaining "that the Government's desire to avoid storage costs (particularly with respect to the twenty-two automobiles and the tractor

trailers) and the risk of depreciation in value (particularly of the computers and other electronic items) constitute 'good cause' for the interlocutory sale of the personal property").

>    II.  **The Subject Property is Perishable and at Risk of Deterioration, Decay, or Injury by Being Detained in Custody Pending the Action; and the Expense of Keeping the Property is Excessive and is Disproportionate to its Fair Market Value**

Good cause exists to grant the motion of the United States. As long as the interlocutory sale does not diminish the value of the property, it may be sold for any of the reasons set forth in Supplemental Rule G(7)(b). S*ee United States v. Real Property and Residence*, 699 F.3d 956, 961-62 (6th Cir. 2012) (affirming an interlocutory sale of a yacht where the owner of the yacht was in default on a loan secured by the yacht and the "value of the underlying property is not at risk from an interlocutory sale, because the yacht will be sold in a commercially reasonable manner taking into account the characteristics of the yacht.") (internal quotation marks and citation omitted).

The very high costs associated with the United States taking custody of the Subject Property in Beirut, repairing it to make it seaworthy, renewing its expired registration, paying docking fees, transiting it to the United States, and then preserving it through what could be very lengthy litigation satisfy multiple prongs of Supplemental Rule G(7)(b). Maintenance and repairs to the Subject Property are extremely expensive, and the Subject Property is already in a state of repair that prohibits an unassisted ocean voyage. The costs for fuel, dockage, crewing, and other expenses are also prohibitive, and would substantially reduce the value of the Subject Property, which is estimated at this time to be approximately $10 million, although the large vessel market is somewhat unpredictable. The approximate costs include:

a. Costs to Date/Transit Costs[2]

| CLIN | DESCRIPTION | EST. QTY. | UNIT | UNIT PRICE | TOTAL PRICE |
|---|---|---|---|---|---|
| | RELOCATION (TUG/TOW) & STORAGE ESTIMATE: Beirut, Lebanon to Miami, FL | | | | |
| 21-IRS-000244 | 2013 Gentech 50M 'Queen Anne' | | | | |
| 0004 | CAPTAIN'S RATE UPON OCEANS (NOT INCLUDING FUEL) | 378.0 | HR | $ 95.84 | $ 36,227.52 |
| 0005 | ADDITIONAL PERSONNEL (HOURLY RATE) | 2,692.2 | HR | $ 82.14 | $ 221,137.31 |
| 0006 | TUG OPERATOR'S HOURLY RATE UP TO 80 FT. | - | HR | $ 250.00 | $ - |
| 0001 | TOW TRUCK LOAD UP RATE | - | EA | $ 150.00 | $ - |
| 0002 | MILEAGE RATE FOR TOWING A VESSEL ON LAND | - | MI | $ 3.76 | $ - |
| 0009 | VESSEL RELOCATION VIA CARGO SHIP | Cost Reimbursable | | | $ 254,800.00 |
| 0010 | MISCELLANEOUS RELOCATION CHARGES | Cost Reimbursable | | | $ 197,500.00 |
| | | | | RELOCATION TOTAL: | $ 709,664.83 |

b. Monthly Costs of Future Maintenance, Dockage, and Other Expenses in Florida

| | |
|---|---|
| Dockage Fees | $11,250 |
| Water / Elect | 5,700 |
| Insurance | 5,500 |
| Crew and provisions | 9,500 |
| Total monthly costs | $31,950 |

*See* attached Exhibit B, Declaration of Thomas J. Abernathy III, Assistant Chief Inspector International Unit, United States Marshals Service

Consequently, an interlocutory sale is necessary to preserve the value of the Subject Property, prevent a loss in the value of the forfeiture, and avoid tremendous expense to the United States, especially given that Defendant Sezgin Baran Korkmaz is currently being detained in Austria and is the subject of extradition requests made by both the United States and Turkey.[3]

---

[2] These costs may go up or down depending on whether the sale is accomplished in Europe or if the Subject Property is transported to the U.S.

[3] As has been reported in the press, Korkmaz was arrested in Austria on June 19, 2021, and is currently being detained pending the resolution of the extraditions requests. The Department's Office of International Affairs has informed us that once the court in Austria makes a decision on each extradition request, Korkmaz can appeal either or both of the decisions to a court of appeals. Once those decisions are final, the Ministry of Justice would then decide which of the two competing extradition requests would prevail. As such, it is anticipated that the extradition process will take months if not years to conclude.

Upon information and belief of the United States, there are three potential interested parties who might oppose this Motion for Interlocutory Sale:

1) Sezgin Baran Korkmaz, who is represented by counsel, Mark Srere, Esq., Bryan Cave Leighton Paisner, 1155 F Street NW, Suite 700, Washington, DC20004-1357 USA, (202) 508-6050, mark.srere@bclplaw.com.  Notice will be given to counsel;

2) Lev Dermen, a/k/a Levon Termendzhyan, who is represented by counsel, Mark J. Geragos, Esq., Geragos & Geragos APC, 644 S Figueroa St., Los Angeles, CA 90017, (213) 625-3900, mark@geragos.com.; and

3) Alea Marine Limited, an entity based in the British Virgin Islands. Alea Marine Limited claims to be the sole owner of the Subject Property, but the evidence obtained by the government indicates that it is a nominee.  Alea Marine Limited is represented by counsel, Nathan A. Crane, Esq., Snow Christensen & Martineau, 10 Exchange Place, 11Th Fl, PO Box 45000, Salt Lake City, UT 84145-5000, (801)521-9000, nac@scmlaw.com.

On August 17, 2021, counsel for Alea Marine Limited informed the government that his client rejected the government's offer for it to take back immediate possession of the boat in exchange for posting a substitute *res* in the Court's registry which would serve as the object of the government's forfeiture claims rather than the boat.

Notice will be given to the above-referenced counsel, who are already aware of the seizure of the Subject Property and of the intent of the United States to sell the Subject Property and retain the proceeds pending forfeiture as a substitute *res*.  Counsel for Defendant Dermen has disclaimed any interest in the Subject Property.  Counsel for the other two parties have been informed of the pendency of this Motion and plan.  Because of the extremely high costs associated with maintaining and storing the Subject Party, the United States further moves the

Court to require the named potential interested parties to file any opposition to this motion within seven (7) days of service upon counsel. A proposed Order to that effect is also filed herewith.

The sale of the property will be turned over to the United States Marshal Service ("USMS") and the USMS, including any contractor retained by the USMS, may auction the Subject Property according to its policies, practices, and procedures. The USMS has sole discretion to decide the logistics of the auction, including but not limited to, the timing of such auction; and the auction process itself.

The proceeds from the sale shall be disbursed in the following priority and order:

a. First, all costs of acquisition, transport to the United States, and sale of the Subject Property;

b. Second, all costs not previously paid that were incurred by the United States, its agencies, or contractors in connection with the storage, maintenance, repair, marketing, and sale of the Subject Property; and

c. Finally, all remaining proceeds shall be held by the United States Marshal Service in a seized asset account pending the entry of this court's forfeiture order and directions in that order how the Marshals may dispose of the proceeds.

The proceeds shall be a substitute *res* for the Subject Property, and the criminal forfeiture of net proceeds shall be treated as if they were the Subject Property. Any claim of third-parties to the Subject Property must be made in the context of an ancillary proceeding pursuant to 21 U.S.C. § 853(n) following the entry of the forfeiture order which follows a finding of guilt of the defendant and the finding of a nexus by the Court.[4]

---

[4] 21 U.S.C. § 853(n) provides, in part:

## CONCLUSION

The United States requests this Court to grant its Motion for an Interlocutory Sale of the Subject Property for cause pursuant to Rule 32.2(b)(7) and 21 U.S.C. § 853(e).

Without interlocutory sale relief, the Subject Property's value will be significantly diminished and jeopardize the ability of the United States to not lose money to accomplish this forfeiture. Conversion of the Subject Property to cash through a sale will preserve the value of the property for the benefit of the United States and, should the Subject Property ultimately not be deemed forfeitable at trial, to the benefit of the interested parties as well.

Respectfully submitted this 13th day of September 2021.

ANDREA T. MARTINEZ
Acting United States Attorney

*/s/ Cy H. Castle*
Cy H. Castle
Assistant United States Attorney

---

(n) Third Party Interests

    (1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

    (2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

Certificate of Service

I certify that on the 13th day of September 2021, I caused a copy of the foregoing to be filed under seal through the CM/ECF electronic filing system, and I caused a copy to be emailed to counsel of record for Sezgin Baran Korkmaz, Lev Aslan Dermen a/k/a Levon Termendzhyan, and Alea Marine Limited.

/s/ Cy H. Castle
CY H. CASTLE
Assistant United States Attorney