ANDREA MARTINEZ, Acting United States Attorney (#9313)
RICHARD M. ROLWING, Special Assistant United States Attorney (OH #62368)
JOHN E. SULLIVAN, Senior Litigation Counsel, Tax Division (WI #1018849)
CY H. CASTLE, Assistant United States Attorney (#04808)
DARRIN L. McCULLOUGH, Senior Policy Advisor, Money Laundering and Asset Recovery
       Section (GA #487011)
Attorneys for the United States of America
111 South Main Street, #1800 | Salt Lake City, Utah 84111
T: (801) 524-5682
Email: richard.m.rolwing@usdoj.gov; john.e.sullivan@usdoj.gov; cy.castle@usdoj.gov
       darrin.mccullough@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>SEZGIN BARAN KORKMAZ,<br><br>　　　　　　Defendant. | Case No. 2:21-CR-140-JNP<br><br>DECLARATION OF ASSISTANT CHIEF INSPECTOR THOMAS J. ABERNATHY III IN SUPPORT OF THE MOTION BY THE UNITED STATES FOR INTERLOCUTORY SALE<br><br>Judge Jill Parrish<br><br>Magistrate Judge Dustin B. Pead |

　　　　　I, Thomas J. Abernathy III, Assistant Chief Inspector, United States Marshals Service, hereby declare under penalty of perjury as follows:

### INTRODUCTION & AGENT BACKGROUND

　　　　　1.　　I submit the following declaration in lieu of affidavit, as permitted by 28 U.S.C. § 1746.  I am the United States Marshal overseeing the seizure, transport, repair, and potential sale of the luxury yacht named the "Queen Anne," refitted by Pina Marin in 2018, Hull Number Renewal No. DLZ76014G717, International Maritime Organization No. 9704958, Maritime Mobile Service Identity No. 518100712, and call sign E5U3623, and all property contained

thereon and therein (hereinafter the "Subject Property"), presently in the lawful possession, custody, and control of the United States.

2. I am aware this declaration will be filed with the U.S. District Court for the District of Utah and that it is the legal equivalent of a statement under oath.

3. I am a currently employed as an Assistant Chief Inspector with the United States Marshals Service ("USMS"). I have been so employed since May 1997. I currently lead the Asset Forfeiture Division, International Unit. My duties include seizing and forfeiting assets located outside the continental United States ("OCONUS"). I have supervised this unit for approximately ten years. I also have experience conducting analyses of complex financial transactions and in debriefing defendants, witnesses, and other persons involved in frauds.

4. I am familiar with the statutes, rules, regulations, and procedures governing the USMS' authority regarding the seizure, maintenance, and disposition of assets subject to forfeiture to the government. I am also familiar with the system of records used by the Asset Forfeiture Division to keep track of expenses related to each asset under our custody and control. I have reviewed these records and am familiar with their contents and structure and this declaration is based on that personal knowledge.

## FACTS

5. On April 6, 2021, the Honorable Dustin B. Pead, Magistrate Judge, issued a sealed warrant authorizing the seizure of the Subject Property. The warrant is based upon a finding by the Court of probable cause, supported by affidavit, that the Subject Property is subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), and 18 U.S.C. § 982 (a)(1), as it constitutes property, real or personal, involved in a violation of 18 U.S.C. §1956, or as property traceable to such property.

6. The warrant was subsequently delivered by a Mutual Legal Assistance Treaty request to the Central Authority of Lebanon, where the Subject Property was docked at the Port of Beirut.

7. On April 23, 2021, with consent of the Central Authority of Lebanon, the Court's seizure warrant was executed on the Subject Property in the Port of Beirut, and the Lebanese Internal Security Force at the request of the United States Marshals Service assumed possession, custody, and control of the Subject Property.

8. On July 31, 2021, the Lebanese Internal Security Force released the Subject Property to the United States Marshals Service, under my direction, and it was moved from the Port of Beirut to Limassol Marina, Cyprus, where it remains in the possession, custody, and control of the United States. It is the intent of the United States to either sell the Subject Property to the highest bidder in its as-is condition where it is currently docked in Cyprus, or if no sale can be made in Cyprus, to move the Subject Property as soon as possible to a port in the United States for disposition, likely in Jacksonville, Florida, by way of Genoa, Italy.

9. The costs associated with the United States taking custody of the Subject Property in Beirut, repairing it to make it seaworthy, renewing its expired registration, paying docking fees, paying to potentially transport it to the United States, and then preserving it through what could be very lengthy litigation are very high. Maintenance and repairs to the Subject Property are extremely expensive and time consuming, and the Subject Property is already in a state of repair that prohibits an unassisted ocean voyage. The costs for fuel, dockage, crewing, and other expenses are also prohibitive, and would substantially reduce the value of the Subject Property,

which is estimated at this time to be approximately $10 million, although the large vessel market is somewhat unpredictable.[1]  The approximate costs include:[2]

a.  Costs to Date/Transit Costs[3]

| RELOCATION (TUG/TOW) & STORAGE ESTIMATE: Beirut, Lebanon to Miami, FL | | | | | | |
|---|---|---|---|---|---|---|
| 21-IRS-000244 | 2013 Gentech 50M 'Queen Anne' | | | | | |
| CLIN | DESCRIPTION | EST. QTY. | UNIT | UNIT PRICE | | TOTAL PRICE |
| 0004 | CAPTAIN'S RATE UPON OCEANS (NOT INCLUDING FUEL) | 378.0 | HR | $ 95.84 | | $ 36,227.52 |
| 0005 | ADDITIONAL PERSONNEL (HOURLY RATE) | 2,692.2 | HR | $ 82.14 | | $ 221,137.31 |
| 0006 | TUG OPERATOR'S HOURLY RATE UP TO 80 FT. | - | HR | $ 250.00 | | $ - |
| 0001 | TOW TRUCK LOAD UP RATE | - | EA | $ 150.00 | | $ - |
| 0002 | MILEAGE RATE FOR TOWING A VESSEL ON LAND | - | MI | $ 3.76 | | $ - |
| 0009 | VESSEL RELOCATION VIA CARGO SHIP | Cost Reimbursable | | | | $ 254,800.00 |
| 0010 | MISCELLANEOUS RELOCATION CHARGES | Cost Reimbursable | | | | $ 197,500.00 |
| | | | | RELOCATION TOTAL: | | $ 709,664.83 |

b.  Monthly Costs of Future Maintenance, Dockage, and Other Expenses in Florida

| | |
|---|---|
| Dockage Fees | $11,250 |
| Water / Elect | 5,700 |
| Insurance | 5,500 |
| Crew and provisions | 9,500 |
| Total monthly costs | $31,950 |

10.  Consequently, an interlocutory sale is necessary to preserve the value of the Subject Property, prevent a loss in the value of the forfeiture, and avoid tremendous expense to

/

/

---

[1] This estimate was made in consultation with professional maritime ship brokers who would likely conduct the sale.

[2] These estimates are derived from actual costs incurred as of the date of this declaration, together with estimates going forward provided by professional maritime ship brokers and industry professionals assisting in this process, including a Marine Engineer (B.Sc. & M.Sc.) who is also an Accredited Sworn Marine Surveyor (MIIMS, MCMS).

[3] These costs may go up or down considerably depending on whether the sale is accomplished in Europe or if the Subject Property is transported to the U.S.

the United States.

    I declare under penalty of perjury that the foregoing is true and correct.

    Dated this ___ day of September, 2021.

*Thomas J Abernathy III*
_____
Thomas J. Abernathy III
Assistant Chief Inspector, USMS